**MAURIN, JR., v. ALLTMONT & BRO., Appellants**

---

(Jan. 31, 1927. Opinion and Decree.)
(Feb. 28, 1927. Rehearing Refused.)

---

(*Syllabus by the Court*)

1. **Louisiana Digest—Bills and Notes— Par. 238; Payment—Par. 24.**

Where a creditor is in the habit of retaining checks given as evidence of a debt after payment by his debtor, the fact that he holds a check of the debtor will not be accepted as conclusive of the debtor's failure to pay the debt, and, when other circumstances tend to discredit the creditor, the debtor's statement that the debt has been paid will be accepted.

Appeal from Civil District Court, Division "D". Hon. Porter Parker, Judge.

Action by Fortune Maurin, Jr., against C. Alltmont & Brother, et al.

There was judgment for plaintiff and defendant appealed.

Judgment affirmed.

P. E. Edrington, Jr., of New Orleans, attorney for plaintiff, appellee.

H. H. Weiner, J. A. Woodville, of New Orleans, attorneys for defendants, appellants.

WESTERFIELD, J. Plaintiff, Maurin, was a partner of one Fred Ress. The firm of Ress & Maurin operated a soft drink and restaurant business in Reserve, St. John the Baptist parish. Ress was in the habit of borrowing $1000.00 for account of his firm from Lazare Weil, a storekeeper in Reserve, and a partner of Charles and Alfred Alltmont, of New Orleans. Weil's store was owned and operated by the partnership of which he was a member, but since his partners lived in New Orleans, Weil managed the business as though he owned it. When Ress got the money from Weil he would give him a check dated one month ahead for $1065.00, the $65.00 being for interest. When Ress paid Weil, usually by check having a current date, it would be cashed by Weil at once. This transaction was repeated from time to time until the firm of Ress & Maurin dissolved. Whereupon Alltmont demanded that Maurin pay one of these past dated checks for $1065.00, which Maurin did by giving $200.00 in cash and notes of $100.00 each for the balance, the notes maturing at monthly intervals. After paying four notes, or $600.00 in all, Maurin, alleging that he had paid the Alltmont partnership in error because the check had been previously paid, brought this suit for the return of the cash and the notes given in error.

The district judge first decided in defendant's favor, dismissing plaintiff's suit. Thereafter, a new trial being granted, gave judgment for plaintiff.

The case is not free from difficulty, but we believe, as did the judge a quo, in his final disposition of the case, that plaintiff is entitled to judgment. Certainly we can not say that the judgment was manifestly erroneous as, under familiar rules of appellate procedure, we should be obliged to do in order to reverse the judgment in a case like this which involves only a question of fact.

The evidence shows that very unbusinesslike methods were employed by the lender and the borrower. Payments were made and in some instances no receipts given and the checks given as evidence of the indebtedness were not returned. Checks, given by the borrower, which were not intended to be presented, were used in lieu of notes. Other checks which were intended to be cashed were given in payment of the loans. Weil, on several occasions, would retain the note checks after the loan had been paid by a real check, and when the last settlement was made with Alltmont by Maurin, paying cash and giving notes, the note check was not returned. In fact it was only returned shortly before this suit was filed, on demand of plaintiff's counsel, nearly, if not quite, six months after the settlement.

It will be seen, that, with such methods of transacting business, plaintiff's contention that the note check was paid and not returned is at least plausible. Ress claims to have paid Weil $1000.00 in cash on one occasion, which Weil denies receiving. Cambre, a by-stander, testified that he saw Ress counting out currency to Weil, following a conversation, overheard by Cambre, in which Weil demanded, and Ress agreed to pay a debt, though Cambre cannot say how much was demanded or how much actually paid. Finally, Weil's testimony is most unsatisfactory. He first denied, emphatically, getting any cash from Ress and afterwards qualified by saying he didn't think so. He told Ress that one of these note checks which Ress had paid and was seeking to have returned to him was in New Orleans when, as a matter of fact it was in his, Weil's, possession in Reserve.

We think the judgment appealed from is correct and it is therefore affirmed.